UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA KREISHER, | No. 2:12-cv-0530 DAD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for further proceedings consistent with this order.

PROCEDURAL BACKGROUND

On September 4, 2003, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on April 13, 2002. (Transcript ("Tr.") at 240-42.) Plaintiff's application was denied initially and upon reconsideration. (Id. at 207-08.) Plaintiff requested a hearing and a hearing was held before an Administrative Law Judge ("ALJ"). (Id. at 50, 78-108, 109-19, 120-52.) The

1

ALJ issued a decision on March 8, 2007, finding that plaintiff was not disabled. (Id. at 47-60.) Plaintiff sought review from the Appeals Council and on August 2, 2007, the Appeals Council remanded the case back for a new hearing. (Id. at 209.)

Thereafter, new administrative hearings were held and, on September 17, 2008, the ALJ issued a decision again finding that plaintiff was not disabled. (Id. at 21-33.) After the Appeals Council denied plaintiff's request for review, plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing a complaint in this court. (Case No. 2:09-cv-1725 EFB.) On March 9, 2011, plaintiff's motion for summary judgment was granted and the matter was remanded for further proceedings. (Tr. at 804-12.)

Following remand, a hearing was held before a different ALJ on August 3, 2011. (Id. at 1161-93.) Plaintiff was represented by an attorney and testified at that administrative hearing. On October 28, 2011, the ALJ issued a decision again finding that plaintiff was not disabled. (Id. at 790-802.) The ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.
>
> 2. Through December 31, 2010, the claimant engaged in substantial gainful activity during the following periods: April 2004 to November 2004 and July 2009 through the present (20 CFR 404.1520(b) and 20 CFR 404.1571 *et seq.*).
>
> 3. However, there have been two continuous 12-month periods during which the claimant did not engage in substantial gainful activity. These periods encompass June 1, 2001 through March 2004 and December 2004 through June 2009. The remaining findings address these periods.[1]
>
> 4. Through the date last insured, the claimant had the following severe impairments: degenerative lumbar disc disease (20 CFR 404.1520(c)).
>
> 5. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

/////

---

[1] Plaintiff is seeking disability benefits for two closed periods, one from April 13, 2002, through April 2004, and the other from November 2004 to July 2009. (Tr. at 1090, 1164.)

     6. Through the date last insured, the claimant had the residual functional capacity to perform light work, with occasional postural activities but no climbing ladders/ropes/scaffolds, and no work around hazards.

     7. Through the date last insured, the claimant was capable of performing past relevant work. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

     8. Alternatively the claimant could do other work even if limited to sedentary work.

     9. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2001, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(f)).

(Id. at 795-802.)

Plaintiff did not seek review of the ALJ's decision by the Appeals Council. Plaintiff, instead sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 28, 2012.

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir.2007). The five-step

sequential evaluation process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In her pending motion plaintiff argues that the ALJ committed the following four principal errors: (1) the ALJ erred in failing to find at step two of the sequential evaluation that plaintiff had severe impairments; (2) the ALJ erred with respect to his treatment of the medical opinion evidence; (3) the ALJ failed to pose a legally adequate hypothetical question to the Vocational Expert; and (4) the ALJ improperly rejected plaintiff's own testimony concerning her subjective symptoms as well as a third party statement, without a clear and convincing reason for doing so. (Pl.'s MSJ (Doc. No. 18) at 4.[2])

/////

/////

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

I. **Severe Impairments**

Plaintiff argues that the ALJ improperly evaluated plaintiff's impairments at step two of the sequential evaluation and erred by failing to find that plaintiff's severe impairments included migraine headaches, bowel/bladder incontinence, carpal tunnel syndrome, and depression. (Id. at 33.)

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, and carrying, (2) capacities for seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28). "Step two, then, is 'a de minimis screening device [used] to dispose of

5

groundless claims[.]'" Id. (quoting Smolen, 80 F.3d at 1290).  See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard".); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

Here, the ALJ found that plaintiff's carpal tunnel syndrome, migraine headaches, depression and bowel/bladder incontinence were not severe impairments.  (Tr. at 796.)  However, with respect to plaintiff's carpal tunnel syndrome, Dr. Rajiv Pathak assessed plaintiff as suffering from "bilateral carpal tunnel syndrome," after a June 23, 2004 consultative examination.  (Id. at 406-11.)  Examination and testing conducted on August 11, 2006, revealed "impaired light touch in the right upper extremity," positive Phalen's test bilaterally at the wrists, positive Tinel's test, and was "suggestive of a MODERATE median nerve compromise at or about the wrist through the carpal tunnel on the left . . . ."  (Id. at 487.)  Dr. Rosalind Hsia's February 8, 2007 examination also revealed that plaintiff's "[l]ight touch and pinprick were reduced in the dorsal radial right hand and forearm . . ."  (Id. at 726.)

With respect to plaintiff's migraine headaches, the ALJ's opinion noted that the "record indicates that the claimant has a history of suffering from 1 to 2 migraine headaches each month," but nonetheless found that those migraine headaches were not severe because plaintiff did not allege that they were disabling when she was being treated in 2003 and 2004, and because "[o]bjective findings do not support her allegations either."  (Id. at 798.)  While plaintiff's medical records may not support a finding that her migraine headaches were severe in 2003 or 2004, the record establishes that by 2006 and continuing through 2007, plaintiff was regularly complaining about the pain caused by her migraine headaches and was being treated for that condition with medication.  (See id. at 515-518, 521-524, 529-537, 540-65.)  Moreover, in asserting that plaintiff's migraine headaches had not been confirmed by objective findings, the ALJ cited the fact that MRIs of plaintiff's brain were normal.  (Id. at 798.)  It is not at all clear to the undersigned, however, that a normal brain MRI precludes the presence or symptoms of migraine headaches.  Nor is there any evidence in the record before the court which would support such a conclusion.

6

With respect to plaintiff's depression, plaintiff was diagnosed as suffering from depression in March of 2002, and prescribed Celexa for treatment. (Id. at 357.) On January 13, 2006, plaintiff complained of "anxiety, hypersensitivity, emotional liability, depression, not doing well, as a chronic condition . . . ." (Id. at 443.) She was then assessed as having "[r]efractory depression" and prescribed Sertraline HCL. (Id. at 444.) Between February 2006 and August 2006, plaintiff was treated by Dr. David Pickens, a clinical psychologist, for "Major Depression." (Id. at 481.) Dr. Pickens saw plaintiff for eleven individual psychotherapy sessions and opined that plaintiff's ability to think, concentrate and make decisive decisions was "seriously compromised." (Id.) Plaintiff was again assessed as suffering from "[c]hronic major depression" on October 24, 2006. (Id. at 527.)

With respect to her bowel/bladder incontinence, on August 25, 2006, plaintiff was examined by Dr. Wesley Hilger for "[u]rinary incontinence." (Id. at 508.) Dr. Hilger found that plaintiff suffered from "stress urinary incontinence." (Id.) After an October 13, 2006, examination it was Dr. Hilger's opinion that plaintiff suffered from "[s]tress incontinence at high bladder volume" and plaintiff was instructed on "how to do intermittent self cathing . . . to alleviate her bladder." (Id. at 514.) On October 11, 2007, Dr. Rosalind Hsia noted that plaintiff suffered from "sever neurogenic bowel and bladder, fecal and urinary incontinence." (Id. at 768.)

In light of this evidence of record, it cannot be said that "the ALJ had substantial evidence to find that the medical evidence clearly established that [the plaintiff] did not have" a severe impairment with respect to her carpal tunnel syndrome, migraines, depression and bowel/bladder incontinence. Webb, 433 F.3d at 687.

Accordingly, the court finds that plaintiff is entitled to summary judgment in her favor with respect to her claim that the ALJ erred by failing to find all of plaintiff's severe impairments at step two.

## II.     Medical Opinions

Plaintiff argues that the ALJ also erred in rejecting the opinion of her treating and examining physicians without a legitimate basis for doing so. (Pl.'s MSJ (Doc. No. 18) at 40.) In this regard, treating physicians Dr. Rosalind Hsia, Dr. Cheryl Matossian and Dr. David Pickens,

each provided medical opinions, based on their histories as treating physicians, assessing the severity of plaintiff's symptoms and functional limitations. (See Tr. at 431-36, 481, 766-771, 773-75, 779-86.) Likewise, examining physicians Dr. Pavitar Cheema and Dr. Rajiv Pathak, also provided similar medical opinions based on their examinations of plaintiff. (Id. at 403-05, 406-11.)

The ALJ's opinion, however, gave little more than a cursory treatment to these opinions, stating:

> I give little weight to the opinions of Drs. Matossian, Pickens and Hsia. The claimant's work activity and discredited subjective complaints lessen the reliability of these opinions.
>
> I give little weight to the consultative examiner's opinion of moderate mental limitations. 8F. The claimant did skilled work in 2004 and since 2009.
>
> I give little weight to the consultative examiner's opinion of sedentary work with limited manipulation. 9F. The claimant was doing light work at the time.

(Id. at 800.)

As noted above, Drs. Matossian, Pickens and Hsia were plaintiff's treating physician. Accordingly, their opinions were entitled to considerable weight. The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). A treating physician's uncontradicted opinion may be rejected only for clear and convincing reasons, while a treating physician's opinion that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31.

Here, the ALJ summarily rejected the opinion of several treating physicians based on plaintiff's work activity before and after the period for which she is seeking disability and

8

1 plaintiff's "discredited subjective complaints . . . ." (Tr. at 800.) Work after the period for which
2 an applicant is seeking disability, however, is not a specific and legitimate reason for rejecting the
3 opinion of a treating physician, or the medically supported testimony of an applicant, unless the
4 work in question is wholly inconsistent with the claimed disability. See Moore v. Commissioner
5 of Social Sec. Admin., 278 F.3d 920, 925 (9th Cir. 2002) ("we hold that an applicant's
6 employment that begins after the end of the period for which the applicant is seeking disability
7 benefits, unless wholly inconsistent with the claimed disability, is not a specific and legitimate
8 reason for rejecting the opinions of examining physicians that an individual is disabled.  It
9 follows that such a record of work does not supply the more demanding clear and convincing
10 reason required to reject the medically supported testimony of an applicant."); see also Trenda v.
11 Astrue, No. 3:08-cv-92, 2009 WL 3063008, at *8 (D. N.D. Sept. 21, 2009) ("Like the Ninth
12 Circuit, this court finds that Trenda's employment after her alleged period of disability should not
13 have been used as evidence to determine her ability to work during the closed period because it is
14 not inconsistent with her claimed disability."); cf. Flaten v. Secretary of Health & Human
15 Services,  44 F.3d 1453, 1458 (9th Cir. 1995) (the Act designed "to encourage individuals who
16 have previously suffered from a disability to return to substantial gainful employment when their
17 medical condition improves sufficiently to allow them to do so."); Myers v. Richardson, 471 F.2d
18 1265, 1267 (6th Cir. 1972) ("framers of the Act contemplated that some applications for benefits
19 would be made which would result in an award of benefits after the claimant had recovered").

20        Although not adequately addressed by the ALJ, the court notes that plaintiff's
21 current work does not appear to be wholly inconsistent with her claimed disability.  In this regard,
22 plaintiff's current employer has been willing to "accommodate any special needs" required by
23 plaintiff's limitations and has provided her with a private office, a special chair, "a headset so she
24 can sit, walk around, or even lay down in her office while using the telephone," and has allowed
25 plaintiff to work from home "[w]hen she's having a rough day . . . ." (Tr. at 1171.)  At the
26 August 3, 2011 administrative hearing plaintiff testified she worked from home "at least two days
27 a week." (Id. at 1186.)  According to the Vocational Expert who testified at the hearing, an
28 /////

9

employer allowing an employee to work from home is not "common" and is not "the norm." (Id. at 1186-87.)

Moreover, the ALJ's rejection of the opinions of plaintiff's treating and examining physicians was conclusory, and was not supported by any further discussion of the opinions or the relevant evidence.

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). See also McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

Accordingly, the court finds that plaintiff is entitled to summary judgment in her favor with respect to her claim that the ALJ erred in rejecting the opinion of plaintiff's treating and examining physicians without a legitimate basis for doing so.[3]

### III. Vocational Expert

Plaintiff next argues that the ALJ failed to properly asses her Residual Functional Capacity ("RFC") and, therefore, failed to pose a legally adequate hypothetical question to the Vocational Expert ("VE"). (Pl.'s MSJ (Doc. No. 18) at 51-52.)

/////

---

[3] In her cross-motion for summary judgment, defendant points to additional potential reasons the ALJ could have discounted the medical opinions of plaintiff's treating and examining physicians. (Def.'s MSJ (Doc. No. 20) at 19-23.) The court, however, is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009). Rather, the Commissioner's decision "must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996). See also Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion . . . .").

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted). See also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."); Palomares v. Astrue, 887 F.Supp.2d 906, 919 (N.D. Cal. 2012) ( "Since the analysis of RFC was flawed and not based on the whole record, the VE's testimony based thereon has no evidentiary value, and the ALJ's finding that Mr. Palomares can perform his previous work is not based on substantial evidence in the whole record."); cf. SSR 83-14 ("Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.").

Here, because the ALJ erred at step two of the sequential evaluation and improperly rejected of the medical opinion evidence, the ALJ's RFC was flawed. Under those circumstances, the VE's testimony cannot constitute substantial evidence to support the ALJ's findings.

Accordingly, the undersigned finds that plaintiff is also entitled to summary judgment in her favor with respect to her claim that the ALJ failed to pose a legally adequate hypothetical question to the VE.

/////
/////
/////
/////

CONCLUSION

With error firmly established, the court has the discretion to remand or reverse and award benefits.[4] McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. Id. at 594.

Here, the ALJ erred at step two of the sequential evaluation, failed to properly analyze the medical opinion evidence and, therefore, failed to pose a legally adequate hypothetical question to the VE. The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

Unfortunately, the record in this case has still not been adequately developed so as to allow for a determination of whether plaintiff is disabled. Therefore, the court must reluctantly remand the matter once again for further administrative proceedings so that the ALJ may correct the errors noted above and continue with the five-step sequential evaluation process established

/////

---

[4] In light of the remand required by the ALJ's error at step two, the court need not address plaintiff's remaining claim. See Sanchez v. Apfel, 85 F.Supp.2d 986, 993 n.10 (C.D. Cal. 2000) ("Having concluded that a remand is appropriate because the ALJ erred in ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's credibility.").

12

under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920, if necessary.[5] See Vasquez v. Astrue, 572 F.3d 586, 596 (9th Cir. 2009) (remanding for further proceedings where the evidence suggested that plaintiff had severe mental impairment and where that mental impairment was not accounted for in ALJ's RFC determination at step four).

On remand, the ALJ shall recognize plaintiff's carpal tunnel syndrome, migraines, depression and bowel/bladder incontinence as severe at step two of the sequential evaluation process and shall proceed with the sequential analysis. The effect of plaintiff's impairment shall be carefully considered, the medical opinions shall be given proper weight, the subjective testimony of plaintiff, as well as any third party statement shall be considered, and the ALJ shall set forth specific, clear and convincing reasons if such testimony is discounted. Should the ALJ deem it necessary to conduct a supplemental administrative hearing utilizing the expertise of a VE, the ALJ's hypothetical question shall account for all of plaintiff's limitations and restrictions.

Accordingly, in accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 18) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 20) is denied;

3. The decision of the Commissioner of Social Security is reversed for the reasons indicated above; and

4. This case is again remanded for further proceedings consistent with this order.

Dated:  September 4, 2013

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.soc sec\kreisher0530.ord.docx

---

[5] Given the length of time plaintiff's claim has been pending and the Commissioner's repeated failure to properly analyze her claim, the court has seriously considered simply remanding this matter for an award of benefits. However, in light of the unique nature of plaintiff's claim involving two time periods almost five years apart, the substantial amount of evidence relating to the claim and the state of the record, the court cannot conclude that it is clear from the evidence of record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated.